(C.D. 2166)

F. H. PAUL & STEIN BROS., INC. *v.* UNITED STATES

UNITED STATES CUSTOMS COURT, SECOND DIVISION

(Decided April 12, 1960)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The above two cases were consolidated for trial. They relate to importations which are described on the consular invoices as "Etched Aluminum Capacitor Foil * * * gauge .0037"."

The foil embraced within protest 326457–K was classified as aluminum foil of the kind made dutiable at the rate of 20 per centum ad valorem in paragraph 382(a) of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 382(a)), as modified by the Swiss Trade Agreement, 69 Treas. Dec. 74, T.D. 48093.

The similar foil to which protest 325763–K relates received the same classification by the collector but due to another modification of paragraph 382(a), *supra*, was subjected to duty at the rate of 19 per centum ad valorem by virtue of the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

Plaintiff claims that the subject merchandise is dutiable at the rate of 13¾ per centum ad valorem as parts of articles having as an essen-

tial feature an electrical element or device, not specially provided for, in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

The pertinent text of the statutes above referred to is here set forth:

Paragraph 382(a), as modified by the Swiss Trade Agreement, *supra*:

| | |
|---|---|
| Aluminum foil less than six one-thousandths of one inch in thickness. | 11¢ per lb., but not less than 20% nor more than 40% ad val. |

Paragraph 382(a), as modified by the sixth protocol, *supra*:

| | |
|---|---|
| Aluminum foil over 0.00035 inch but less than 0.006 inch in thickness. | 10.2¢ per lb., but not less than 19% nor more than 38% ad val. |

Paragraph 353, as modified, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    Batteries * * *

  \*      \*      \*      \*      \*      \*      \*

    Other * * * _____ 13¾% ad val.

| | |
|---|---|
| Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof). | The same rate of duty as the articles of which they are parts. |

At the trial, it was stipulated and agreed:

1. That an electrolytic capacitor is in chief value of metal, and

2. That a capacitor, if imported, would be classified for duty in paragraph 353.

These facts were established as a preliminary to an effort to show by testimonial proof that the etched aluminum foil in controversy is "part" of a device which would be classified in said paragraph 353.

The sole witness in the case, Fred Stein, was called by plaintiff. From his testimony, it appears that he is vice president and treasurer of F. H. Paul & Stein Bros., Inc., plaintiff herein, engaged in the importation of metals, chemicals, and other raw materials. He had been dealing in etched aluminum foil since 1951, had seen it made at the factory in Germany, and was familiar with its uses in the assembly of an electrolytic capacitor.

The undisputed facts of record disclose that a capacitor, also known as a condenser, is a device for the storage of electrical energy. In the manufacture of electrolytic capacitors, etched aluminum foil is used and that is said to be its only use. The etching process is performed with the use of an acid which results in increasing the

surface area on both sides of the foil (see exhibit 5). The active dielectric needed in the capacitor is increased sixfold by the use of the etched foil instead of plain aluminum foil, resulting in a substantial reduction in the size of a capacitor.

After the foil has been cut to form subsequent to importation adapting it for its ultimate use, a given length of anode is wound with paper insulation and cathode foil into a roll known as a section. From this roll or section foil, tabs or wire leads protrude in order to form electrical contacts. The so-called section is then enclosed in a tube and filled with an electrolyte. By sealing both ends of the section, a finished capacitor is produced.

The etched foil, being an integral part of the capacitor which stores the electrical energy, is essential to the operation of the capacitor and is the most valuable part of it. It appears that capacitors are used in every electric motor and in television, radio, telephone computers, defense work, and related things. Prior to the use of etched foil, plain foil was employed, but a capacitor containing plain foil would have to be many times as large as one containing etched foil. In view of the present trend and the requirements of miniaturization in today's industry, the manufacturers are constantly looking for a greater surface foil with a larger capacitance. Exhibit 7 illustrates etched aluminum foil contained in the winding which is sealed in the capacitor.

Aluminum foil, whether plain or etched, is not imported in cut lengths. It comes in reels of varying widths and in random lengths. In the instant importations, 1 reel was 900 meters long, 2 reels had a combined length of 1,165 meters, 8 of 3,000 meters, and 1 of 750 meters. After importation, the foil is shaped, formed, and processed as above indicated (see exhibits 5 and 7).

In the light of the foregoing facts, it is the contention of plaintiff that etched aluminum foil is not the aluminum foil of paragraph 382(a). In essence, plaintiff seeks to establish that etched aluminum foil has, by reason of the etching process, lost its true identity as aluminum foil and has been so far advanced by chemical treatment to be dedicated to the sole use in the production of capacitors. It is no longer available for the ordinary commercial uses of aluminum foil.

In support of its contention, plaintiff invites attention to our decision in *Heidelberg Confectionery Co. et al.* v. *United States*, 58 Treas. Dec. 675, T.D. 44395. There, it was held that small pieces of aluminum foil, one surface of which had been embossed with a decorative design, used exclusively in the confectionery trade for wrapping candies, cut to size to fit its particular purpose, were not dutiable as aluminum foil. It was said by the court that "These articles have been advanced from the material stage to a point where they are dedicated to a spe-

cific use as candy wrappers." In that case, the court followed *Universal Shipping Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 245, T.D. 33479, wherein it was held that the term "sheets of aluminum" means a sheet of the metal made in the form of a broad general surface, and did not include an article made from such sheets.

In our opinion, those cases do not sustain plaintiff's theory. In the *Heidelberg* case, it clearly appears that the aluminum foil there under consideration had been processed and advanced to the point where it was ready for immediate use by the consumer.

The case of *Universal Shipping Co.* likewise draws a distinction between a material and an article made from material.

A case which we deem controlling of our decision herein is *The Harding Co. et al.* v. *United States*, 23 C.C.P.A. (Customs) 250, T.D. 48109. The substance of that case is set forth in the first paragraph of the headnote therein which, so far as pertinent here, reads as follows:

A manufacture made from asbestos yarn, wire, and a mixture of other materials (found by the Customs Court to have but one use, namely, the manufacture of brake linings for automobiles), imported in rolls of about 100 feet in length, of different widths and thicknesses, and which must be cut to fit the individual brake shoe desired, is material for making brake linings, and not parts of automobiles; it is not dedicated, in its imported condition, to the making of any particular brake lining. It was properly classified under paragraph 1501(a), Tariff Act of 1930, as *manufactures of asbestos yarn*, rather than under paragraph 369 as *parts of automobiles*. *United States* v. *The Harding Co.*, 21 C.C.P.A. (Customs) 307, T.D. 46830. [Italics quoted.]

In this connection, see also *American Import Co.* v. *United States*, 26 C.C.P.A. (Customs) 72, T.D. 49612.

In the case now under consideration, nothing has been done prior to importation except to convert plain aluminum foil into etched aluminum foil by a chemical process. So far as the record shows, there are no lines of demarcation to indicate where the reels of foil would be cut or otherwise shaped for use. Therefore, at the time of importation, the etched aluminum foil was nothing more or less than material which, by further processes of manufacture subsequent to importation, would be converted into capacitors. Hence, in no proper sense would the subject merchandise, at the time of importation, be regarded as "part" of an article having as an essential feature an electrical element or device. In our opinion, the etching process has not advanced the instant merchandise to a stage which excludes it from the provision for aluminum foil in paragraph 382(a), *supra*.

We have examined other cases cited by counsel in their briefs but believe it would serve no useful purpose to review them here.

Upon the record and for the foregoing reasons, the protests are overruled in all respects, and judgment will issue accordingly.